UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT
CASE NO.: 14-15351

WILLMAN SUAZO
Plaintiff/Appellant

vs.

NCL (BAHAMAS), Ltd.
Defendant/Appellee
_____/

# APPELLANT'S RESPONSE IN OPPOSITION TO NCL'S MOTION FOR SANCTIONS

Plaintiff/Appellant, Willman Suazo, by and through undersigned counsel, files his response in Opposition to NCL (Bahamas) Ltd., (hereinafter "NCL"), Motion for Sanctions, filed on 6/12/2015.

**I.   Introduction: This appeal presents a question of first impression in the Eleventh Circuit. The issue on appeal here is identical to the issue in *Escobar v. Celebration Cruise Operator*, 14-11793, a case pending before this Court.**

This matter presents a question of first impression in this Circuit: whether an arbitration provision in an employment contract can require a poor and indigent employee to pay for the costs of arbitration?

The rule promulgated by the Supreme Court, the D.C. Circuit, the Third Circuit, the Tenth Circuit and the Ninth Circuit is that arbitration agreements in employment contracts are unenforceable, if they require a poor employee (with limited resources) to pay for the costs of arbitration.

1

In contravention of the aforementioned precedent, the district court compelled a poor seafarer (whose indigence was undisputed below), to arbitrate – and to pay for the costs of that arbitration.

The district court's ruling allows the Appellant's employer, a Miami-based cruise line, to price out employees from the dispute resolution process. In doing so, the district court's ruling effectively deprived the Appellant from his day in Court.

Currently pending before this Court is the matter of *Escobar v. Celebration Cruises, Inc.*, 14-11793. The issue on appeal in *Escobar* is identical to the aforementioned issue in this case: Can an arbitration provision in an employment contract require a poor and indigent employee to pay for the costs of arbitration?

On March 27, 2015, this Court held oral arguments in *Escobar*, and has yet to issue an opinion in that case. **During the course of the oral argument, the Court indicated that this was a case of first impression in the Eleventh Circuit**. Accordingly, the outcome in *Escobar* will be dispositive of the issues in this case.

## II.    NCL's Motion for Sanctions misrepresents the issues on appeal.

In the Motion, NCL seeks sanctions under Federal Rule of Appellate Procedure 38. In support of the Motion, NCL (through its counsel) repeatedly misrepresents the issues on appeal. First, NCL claims that "to avoid arbitration" in

2

his Initial Brief, Appellant raised a "public policy defense [under the Convention]."[1] [Motion, p. 7]. **That statement is false**. In the Initial Brief, the Appellant does not challenge or contest arbitration under the Convention's public policy exception. The "public policy defense" is not even mentioned in the Initial Brief.

Second, NCL claims that "Mr. Suazo's counsel, the Lipcon firm, represented appellant crewmembers in at least three appeals decided in 2014 where the Eleventh Circuit rejected Mr. Suazo's 'effective vindication" public policy argument as a defense to arbitration." In support of this statement, NCL cites to three *unpublished* opinons: *Vera v. Cruise Ships Catering & Servs. Int'l, N.V.,* 594 Fed. Appx. 963, 968 (11th Cir. 2014), *Trifonov v. MSC Mediterranean Shipping Co.,* 590 Fed. Appx. 842, 844 (11th Cir. 2014); and *Paucar v. MSC Crociere S.A.,* 552 Fed. Appx. 872 (11th Cir. 2014). [Motion, p. 8].

**None** of the aforementioned unpublished opinions involved the single issue on appeal in this case: whether a crewmember/employeee should be forced to pay for the costs of the arbitration. Payment of arbitration costs was not at issue in any of those three cases. Moreover, in *Trifonov* and *Paucar*, the arbitration agreement required the employer to pay (and the employer did in fact pay) for 100% of the fees of the arbitrator and the administrative costs of the arbitration. Unlike NCL in the

---

[1] Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 21 U.S.T. 2517.

instance case, the employer in *Trifonov* and *Paucar* (MSC) never disputed its obligation to pay for the arbitration from beginning to end.

Third, NCL claims that Appellant's arguments have "been repeatedly and expressly rejected by binding Eleventh Circuit precedent following *Lindo v. NCL (Bahamas), Ltd.,* 652 F. 3d 1257 (11th Cir. 2011)." This is incorrect. As noted earlier, the single issue on appeal in this case (whether the crewmember/employeee should be forced to pay for the costs of the arbitration), was not at issue in *Lindo*. In *Lindo* the seafarer challenged, and this Court enforced, a foreign choice-of-law clause included in the arbitration agreement. Here, Mr. Suazo's Initial Brief does not challenge the foreign choice-of-law clause contained in NCL's arbitration agreement.

Further, as noted earlier, during oral arguments in *Escobar* on March 27, 2015, the Honorable Frank M. Hull, indicated that this was an issue of first impression in the Eleventh Circuit. Judge Hull wrote the majority opinion in *Lindo*. This further indicates that *Lindo* does not foreclose the arbitration cost issue on appeal in this matter. *See Laborers Local 938 Joint Health & Welfare Trust Fund v. B.R. Starnes Co. of Florida,* 827 F. 2d 1454 (11th Cir. 1987) (emphasis added):

> We agree with the district court that the jurisdictional issues and questions of statutory construction involved in this case were fairly debatable and not easily resolved. There was no clear binding precedent on the issue. Rule 11 is intended to deter frivolous suits, **not to deter novel legal arguments or cases of first impression**.

4

### III. Appellant's arguments on appeal are supported by precedent of the Supreme Court and four other circuits.

NCL seeks to compel arbitration under a contract that is silent as to whether Mr. Suazo has to pay the costs of arbitration. Below, NCL interpreted this silence as requiring Mr. Suazo to pay for half of costs of arbitration. [D.E. 18, p. 13 – 18; R.E. 6].

The Appellant, Wilman Suazo, is poor. He cannot afford to pay any part of the arbitration. Forcing Mr. Suazo to pay for arbitration amounts to forcing him to abandon his claims. It effectively prices out Mr. Suazo from the dispute resolution process. For this very reason, the United States Supreme Court, the D.C. Circuit, the Tenth Circuit, the Third Circuit and the Ninth Circuit have held that requiring indigent employees to pay for arbitration costs (including the arbitrator's fees) renders the arbitration provision unenforceable.

Under binding Supreme Court precedent, forcing Mr. Suazo (a poor destitute indigent seafarer) to pay for even half of the costs of arbitration (including half of the arbitrator's fees – which could exceed $20,000 for a 3-day arbitration hearing), makes his participation in arbitration financially prohibitive, depriving him of his day in Court.

In *Green Tree Financial Corp. v. Randolph,* 531 U.S. 79, 81 (2000), the Supreme Court held that **"[t]he existence of large arbitration costs could preclude a litigant from vindicating her rights in arbitration**." The Supreme Court further

5

explained that "a party seeking to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive bears the burden of showing the likelihood of incurring such costs." *Green Tree* at 81.

Most recently, in *American Express v. Italian Colors Restaurant*, 133 S. Ct. 2304, 2310 (2013), the Supreme Court further recognized that under the "effective vindication doctrine" an arbitration agreement is unenforceable if "fees attached to arbitration are so high as to make access to the [arbitral forum] impracticable."

In *Blair v. Scott Specialty Gases*, 283 F. 3d 595 (3d Cir. 2002), the Third Circuit Court of Appeal applied and explained the holding in *Green Tree*. It explained that "[w]hile th[e] court must be mindful of the 'liberal federal policy favoring arbitration agreements,' the Supreme Court has also made clear that arbitration is only appropriate 'so long as the prospective litigant effectively may vindicate [his or her] statutory cause of action in the arbitral forum' allowing the statute to serve its purposes." *Blair* at 605. More importantly, the Third Circuit held that "**arbitration costs are directly related to a litigant's ability to pursue the claim**." Id. (emphasis added). *See Blair* at 605-607 (emphasis added):

> Arbitration costs are directly related to a litigant's ability to pursue the claim. In *Green Tree Financial Corp.–Alabama v. Randolph,* 531 U.S. 79, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000), the Supreme Court acknowledged that "the existence of large arbitration costs could preclude a litigant ... from effectively vindicating her federal statutory rights in the arbitral forum." *Id*. at 90, 121 S.Ct. 513.

6

In *Green Tree,* the plaintiff alleged that the financial institutions that had financed her mobile home violated the Truth in Lending Act and the Equal Opportunity Credit Act. The district court compelled arbitration. Plaintiff appealed, arguing that the arbitration agreement's silence on the subject of fees created a risk that she would be required to bear a prohibitive proportion of the arbitration costs, which would force her to forego arbitration and relinquish her rights. *Id*. The Eleventh Circuit agreed and reversed. When the matter reached the Supreme Court, it held that the articulated risk to the plaintiff was too "speculative" to justify invalidating the arbitration agreement

**Although the Supreme Court's decision in *Green Tree* was decided in a context different from that of an employment dispute, it offers the closest guidance on the issue of arbitration fees**. The Supreme Court in *Green Tree* placed the initial burden of proof on the party resisting arbitration to demonstrate that arbitration would be prohibitively expensive by showing "the likelihood of incurring such costs." *Id*. at 92, 121 S.Ct. 513. The Court found that the plaintiff had not met her burden of proving the costs of the arbitration or her inability to pay. **However, the Court suggested an eventual burden shift when it stated that "[h]ow detailed the showing of prohibitive expense must be before the party seeking arbitration must come forward with contrary evidence is a matter we need not discuss[ ] for ... neither during discovery nor when the case was presented on the merits was there any timely showing at all on the point**." *Id*.

Applying *Green Tree*, the Third Circuit in *Blair*, held that "[d]etermination of whether fee-splitting provision renders an agreement unenforceable must be examined on a case-by-case basis." *See Blair* at 607:

The *Green Tree* decision thus informs us that claimants have the burden to come forward with some evidence to show the projected fees that would apply to their specific arbitrations.
…
Several cases since *Green Tree* have tried to articulate what a claimant needs to show in order to meet her burden on this issue. In *Bradford v. Rockwell Semiconductor Systems Inc.,* 238 F.3d 549 (4th Cir.2001), the court held that the determination of whether fee-splitting renders an

7

agreement unenforceable must be examined on a case-by-case basis rather than through the application of a broad per se rule against all fee-splitting. *Id*. at 556. The court stated,

> [T]he appropriate inquiry is one that evaluates whether the arbitral forum in a particular case is an adequate and accessible substitute to litigation, i.e., a case-by-case analysis that focuses, among other things, upon the claimant's ability to pay the arbitration fees and costs, the expected cost differential between arbitration and litigation in court, and whether that cost differential is so substantial as to deter the bringing of claims.

During the course of the appeal in *Blair*, the Equal Employment Opportunity Commission ("EEOC") weighed in, arguing via an *amicus brief* that the issue of the arbitrators' fees had to be decided "pre-arbitration since a decision to foreclose access to a judicial forum exposes claimants to potentially large arbitration costs that might deter them from pursuing arbitration at all." *Blair* at 608. The Third Circuit agreed, holding that "**[i]f Blair [the employee] is ordered to arbitration without a full inquiry, she may be forced to relinquish her rights under the discrimination statute due to her inability to afford the cost of defending those rights.**" Id. (emphasis added) at 608.

For these reasons, *Blair* held that *Green Tree* gave poor litigants a pre-arbitration right to show they are financially unable to pay for the arbitration. As explained in *Blair*, "[w]ithout some discovery, albeit limited to the narrow issue of the estimated costs of arbitration and the claimant's ability to pay, it is not clear how a claimant could present information on the costs of arbitration as required by *Green Tree*."

8

Applying these principles, the Third Circuit in *Blair* remanded the case back to the district court, ordering it to conduct a pre-arbitration 'factual inquiry' to establish whether the Claimant would be unable to pay for arbitration. *Blair* at 611-612 ("For the reasons set forth above, we will reverse the decision of the District Court and remand for further factual inquiry into the costs of arbitration and Blair's ability or inability to pay for arbitration.")

On remand, the district court ordered the Defendant/employ*er* to pay for all of the costs of arbitration. *See Blair v. Scott Speciality Gases*, 2002 WL 1838486 (E.D. Pa. 2002) ("3. Defendant Scott Specialty Gases shall pay for all of the arbitrator's compensation and travel expenses and the costs of witnesses produced at the direction of the arbitrator.").

Under *Green Tree* and *Blair*, Mr. Suazo met the burden to show that he is poor and unable to pay for the costs of arbitration.

As Mr. Suazo's sworn declaration shows, he does not have the financial means to pay for arbitration (including filings fees and the arbitrator's salary). He is a poor, destitute seafarer, currently living in a rural and isolated area in Nicaragua. The little money that Mr. Suazo earns is barely enough to financially support his family. As the D.C. Circuit explained in *Cole v. Burns Int'l Sec. Servs.,* 105 F.3d 1465, 1481 - 1485 (D.C. Cir. 1997), "**[i]t is unacceptable to require [Plaintiff] to pay for arbitrator's fees, because such fees are unlike anything he would have to pay to**

9

**pursue his statutory claims in court**." (Emphasis added). *See* Affidavit of Wilman Suazo [D.E. 15-1; R.E. 5]:

> I am from a poor rural community in Nicaragua. It is not easy to find work in my home country.
>
> I am the main source of income in my family. I financially support my family. I do not have enough money to pay for an arbitration, much less for an arbitrator's salary.
>
> I do not have the means to pay for thousands of dollars to an arbitrator. To do so would mean to deprive my family of support.

NCL would like for Mr. Suazo to pay for one-half of the arbitration costs. Indeed, in prior arbitrations of other seafarers, NCL has taken the position that its employees should pay for half of the costs of the arbitration. [D.E. 10-1; R.E. 4].

Ordering Mr. Suazo to pay for (even half of) theses costs, amounts to forcing him to abandon his claim. Mr. Suazo cannot deprive his family of support to pay for the arbitration. If NCL has it its way, Mr. Suazo will be left between the proverbial 'rock and a hard place.' This Honorable Court should not force Mr. Suazo to choose between his family and his right to seek relief for the injuries he sustained while working for the Appellee. To do otherwise, will effectively price out Mr. Suazo from the dispute resolution process.

The district court erred because it did not consider Mr. Suazo's affidavit. Instead, in conflict with *Green Tree* and *Blair*, the district court did not give any

weight to Mr. Suazo's affidavit, holding that his financial status and inability to pay were irrelevant. [D.E. 20; R.E. 7].[2]

Other circuit courts of appeal around the country, when faced with the same (or even less evidence) of a Claimant's indigence and financial inability to pay, have unequivocally held such arbitration provisions void and unenforceable.

In *Cole v. Burns Int'l Sec. Servs.,* 105 F.3d 1465, 1481 - 1485 (D.C. Cir. 1997) the D.C. Circuit held that "**[i]t is unacceptable to require [Plaintiff] to pay for arbitrator's fees, because such fees are unlike anything he would have to pay to pursue his statutory claims in court**." (Emphasis added). *Cole* involved an arbitration agreement that was silent on the allocation of the arbitrator's fees between the parties. Concluding that the employer alone must pay for all of the arbitration costs, the D.C. Circuit noted that when arbitration has been imposed by the employer, the employer may not require the employee to pay all or part of the arbitrator's fees in order to pursue statutory claims under Title VII. *Id*. at 1484–85. *See Cole* 1481 – 1485 (emphasis added):

---

[2] Notably, the contents of Mr. Suazo's affidavit are undisputed. NCL did not file any affidavits or any evidence in opposition to Mr. Suazo's affidavit. Moreover, NCL also did not dispute Mr. Suazo's assertion in his Response in Opposition to Arbitration [D.E. 10, p. 3; R.E. 4] that he would be responsible for half of the arbitrator's fees. Finally, NCL did not dispute Mr. Suazo's assertion in his Response in Opposition to Arbitration [D.E. 10, p. 3; R.E. 4] that the costs of an arbitrator could exceed $20,000 for a typical 3-day arbitration hearing.

**[W]e hold that an arbitrator's compensation and expenses must be paid by the employer alone** … **It is unacceptable to require Cole to pay arbitrators' fees, because such fees are unlike anything that he would have to pay to pursue his statutory claims in court** … In sum, we hold that Cole could not be required to agree to arbitrate his public law claims as a condition of employment if the arbitration agreement required him to pay all or part of the arbitrator's fees and expenses.³

The Tenth Circuit reached a similar result in *Shankle v. B–G Maintenance Management of Colorado, Inc.,* 163 F.3d 1230, 1234–35 (10th Cir. 1999). In *Shankle,* the Court held that requiring payment from someone who cannot afford to pay for arbitration "undermines the remedial and deterrent functions of the federal anti-discrimination laws." Id. at 1235. The court noted that arbitration "must provide for an effective and accessible alternative forum," but that the presence of a fee-splitting provision calls the accessibility of that alternative into question. Id. at 1234 n. 3. In *Shankle,* the parties had submitted their claims to arbitration and received a letter from the arbitration provider specifying the costs of arbitration. Id. at 1232. At that point, the employee decided arbitration would be too expensive, canceled the arbitration, and filed suit in federal court. Id. The court of appeals concluded that Shankle, a former janitor, could not afford such a fee and that "it [was] unlikely other

---

³ The parties in *Cole* had stipulated that arbitrators' fees vary between $500 to $1000 or more per day. *Id.* at 1480 & n. 8 (citing several articles regarding the cost of arbitration). The opinion does not indicate whether the court had specific proof of the claimant's financial position but does note that the job from which Cole was fired was that of a security guard, Id. at 1469, and that "[t]hese fees would be prohibitively expensive for an employee like Cole, especially after being fired from his job." Id. at 1484.

similarly situated employees could either." *Id*. at 1234–35. *See Shankle* at 1235 (emphasis added):

> In this case, Mr. Shankle signed the Agreement as a condition of continued employment. The Agreement requires Mr. Shankle to arbitrate all disputes arising between him and his former employer. In order to invoke the procedure mandated by his employer, however, **Mr. Shankle had to pay for one-half of the arbitrator's fees.** Assuming Mr. Shankle's arbitration would have lasted an average length of time, he would have had to pay an arbitrator between $1,875 and $5,000 to resolve his claims. **Mr. Shankle could not afford such a fee, and it is unlikely other similarly situated employees could either. The Agreement thus placed Mr. Shankle between the proverbial rock and a hard place—it prohibited use of the judicial forum, where a litigant is not required to pay for a judge's services, and the prohibitive cost substantially limited use of the arbitral forum** …. **Given this deficiency, we conclude the agreement is unenforceable under the Federal Arbitration Act.**

Finally, in *Chavarria v. Ralphs Grocery Company,* 733 F. 3d 916 (9th Cir. 2013), the Ninth Circuit held that an employer's contract requiring an employee to pay for half of the costs of arbitration was unconscionable and unenforceable. The Ninth Circuit decision was an affirmance of the district court ruling. In its order denying arbitration, the district court held that it was "troubled by the policy's requirement that the arbitrator must, at the outset of the arbitration proceedings, apportion the arbitrator's fees between Ralphs [employers] and the employee regardless of the merits of the claim." The court identified this provision as "a model of how employers can draft fee provisions to price almost any employee out of the dispute resolution process." The combination of these terms created a policy,

13

according to the court, that "lacks any semblance of fairness and eviscerates the right to seek civil redress.... To condone such a policy would be a disservice to the legitimate practice of arbitration and a stain on the credibility of our justice system." *Chavarria v. Ralphs Grocery Company,* 812 F. Supp. 2d 1079, 1089 (C.D. Cal. 2011). *See also Chavarria*, 733 F. 3d 916, 925 (9th Cir. 2013):

> … There is no justification to ignore a state cost-shifting provision, except to impose upon the employee a potentially prohibitive obstacle to having her claim heard. Ralphs' policy imposes great costs on the employee and precludes the employee from recovering those costs, making many claims impracticable.

### III.   NCL's Motion under Rule 38 is unwarranted and should be denied.

Rule 38 is modeled after Federal Rule of Civil Procedure 11. When drafting the rule, the Advisory Committee explained that "the rule is not intended to chill an attorney's enthusiasm or creativity in pursuing factual or legal theories." *Golden Eagle Distributing Corp. v. Burroughs Corp.,* 801 F. 2d 1531 (9th Cir. 1986) (quoting Advisory Committee). Moreover, a Motion for Sanctions should not be used as "a weapon for personal or economic harassment." *Id, citing Zaldivar v. City of Los Angeles,* 780 F.2d 823, 830 (9th Cir. 1986).

Thus, in order to avoid this, courts only impose Rule 11 type sanctions if (1) "after a reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law" or if (2)

14

"a pleading has been interposed for an improper purpose." *Golden Eagle*, 801 F. 2d 1531 (9th Cir. 1986). *See also Donaldson v. Clark*, 819 F. 2d 1551 (11th Cir. 1987) (emphasis added):

>     The reasonable inquiry standard of Rule 11 is not intended to chill innovative theories and vigorous advocacy that bring about vital and positive changes in the law. The rule should not be used to deter potentially controversial or unpopular suits. It does not mean the end of doctrinal development, novel legal arguments, or cases of first impression. The Advisory Committee Note specifies that the rule "is not intended to chill an attorney's enthusiasm or creativity in pursuing factual or legal theories."[4]

Here, it is clear that the Appellee's intention is to chill and deter vigorous advocacy to bring about vital and positive changes in the law. As noted earlier, and as recognized by this Court during the *Escobar* oral arguments on March 27, 2015, this appeal presents an issue of first impression. The rule promulgated by the Supreme Court, the D.C. Circuit, the Third Circuit, the Tenth Circuit and the Ninth Circuit is that arbitration agreements in employment contracts are unenforceable, if they require a poor employee (with limited resources) to pay for the costs of arbitration. The purpose of this appeal is for the Eleventh Circuit to follow the precedent of its sister circuits.

---

[4] Fed. R. Civ. P. 11, Advisory Committee Notes, 1983 Amendments.

All in all, the district court's ruling allows the Appellant's employer, a Miami-based cruise line, to price out employees from the dispute resolution process. In doing so, the district court's ruling effectively deprived the Appellant from his day in Court.

The outcome of this matter, therefore, has the potential to affect millions of workers in the Eleventh Circuit. If this Court affirms the district court's ruling, employers will be emboldened to introduce arbitration agreements requiring employees to pay for the costs of the arbitration. The thousands of dollars that any potential litigant-employee would be required to pay in order to bring a case, will inevitably price out the poorest employees from arbitration, such that they will be deprived of their day in court. By depriving employees of their ability to sue in Court and arbitration (because of steep costs); employers will be able to breach contracts, provide unsafe work-places, deduct wages, and engage in a multitude of exploitative conduct, with impunity. *"*To condone such a policy would be a disservice to the legitimate practice of arbitration and a stain on the credibility of our justice system.*"* *Chavarria v. Ralphs Grocery Company,* 812 F. Supp. 2d 1079, 1089 (C.D. Cal. 2011).

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY, that a true and correct copy of the foregoing was furnished by electronic mail on this 19th day of June, 2015 to the following: Kassandra C. Doyle, Brickell City Tower, 80 Southwest 8th Street, Suite 2805, Miami, Florida 33130.

        LIPCON, MARGULIES, ALSINA,
        & WINKLEMAN, P.A.
        Attorneys for Appellant/Plaintiff
        One Biscayne Tower, Suite 1776
        2 South Biscayne Boulevard
        Miami, FL 33131
        Telephone:  (305) 373-3016
        Facsimile:  (305) 373-6204
        cllinas@lipcon.com

        By: *Carlos Felipe Llinás Negret* ___
           CARLOS F. LLINAS NEGRET
           FLORIDA BAR NO. 73545

# CERTIFICATE OF INTERESTED PARTIES AND CORPORATE DISCLOSURE STATEMENT

The undersigned counsel of record for Appellant, in compliance with FRAP 26.1 and 11th Cir. R. 26.1-1, certifies that the following listed persons, parties, and corporations have an interest in the outcome of this appeal.

Willman Suazo

Richard Alsina, Esq.

Charles R. Lipcon, Esq.

Carlos Felipe Llinas Negret, Esq.

Jason R. Margulies, Esq.

Jacqueline Garcell, Esq.

David A. Villareal, Esq.

Michael A. Winkleman, Esq.

David Alexander Villareal, Esq.

Lipcon, Margulies, Alsina & Winkleman, P.A.

NCL (Bahamas) Ltd.

Kassandra C. Doyle, Esq.

Richard J. McAlpin, Esq.